NO. 12-02-00174-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
JAYANTI PATEL,                                             §                 APPEAL FROM THE 352ND
APPELLANT
 
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

CITY OF EVERMAN, TOM KILLEBREW
D/B/A METRO CODE ANALYSIS, L.L.P.,
APPELLEES                                                      §                 TARRANT COUNTY, TEXAS
                                                                                                                                                            
OPINION
            Jayanti Patel (“Patel”) appeals the trial court’s order granting summary judgment in favor of
the City of Everman (the “City”) and Tom Killebrew (“Killebrew”) d/b/a Metro Code Analysis
(“MCA”). Patel raises five issues on appeal. We affirm in part, and reverse and remand in part.
 
Background
            In 1990, Patel purchased twenty apartment buildings in the Willow Woods complex in
Everman, Texas. In October 1995, the City requested that Patel board up two of his buildings that
were vacant. Patel complied, and further, boarded up other unrented units to exclude vagrants and
prevent crime and vandalism. 
            In April 1997, Patel received notice that the City intended to demolish fifteen of his buildings
because their doors and windows had been boarded up for more than six months. Subsequently,
Patel attended a meeting of the Everman Planning and Zoning Commission (the “Commission”)
concerning the proposed demolition of his buildings and informed the Commission that he was
unaware of the ordinance prohibiting boarding windows and doors for more than a six-month period. 
At the conclusion of the meeting, the Commission voted to recommend to the Everman City Council
that fifteen of Patel’s buildings be demolished.
            In July 1997, Patel filed suit seeking an injunction against the City. Ultimately, the trial court
entered an agreed order (the “agreed order”) stating, in pertinent part, as follows: 
 
IT IS ORDERED that Appellant Patel will repair said property so it is in compliance with all city
codes for the City of Everman.
 
IT IS ORDERED that the City of Everman will reasonably cooperate with Patel and shall not interfere
in the repair process and further that Patel shall cooperate with the City of Everman and shall permit
such inspections as the City of Everman shall require. Patel shall comply with all city codes and
inspections before receiving any certificates of occupancy.
 
In the event that each and every unit is not in compliance with the City of Everman City Codes by
February 9, 1998, then in that event this Order and any Temporary Injunction shall expire and the City
of Everman shall be permitted to demolish all units and property listed above without further notice
and without further Court action.


            Patel testified that from April 1997 until February 1998, he had substantial repairs made to
all of his properties located in the Willow Woods complex, and that every unit in each of his
buildings was newly remodeled and undamaged. Patel testified that he removed the boards from the
exterior of his buildings. Patel further testified that he had the carpet replaced in seventy-six of the
eighty units within his twenty buildings, and further still, that he had pitched roofs installed on
thirteen of his buildings.


 Patel testified that he repainted the units. Patel also testified generally that
he made repairs such as repairing walls, replacing cabinets, and installing new doors and fixtures. 
Patel testified that each unit he owned had a heating unit located inside of it and also employed either
a cooling unit located outside of it, or screens installed on the windows. Patel further testified that
not one unit had a hole in the floor or wall, or contained exposed electrical wiring. Moreover, Patel
testified that he was present at the property on a daily basis for nine years and never saw a rat or
rodent in any of his buildings, nor was he advised of any rat or rodent problem by any of his tenants. 
            Effective on or about February 5, 1998, the City enacted a new building code ordinance. On
February 20, 1998, Killebrew, a City Code Enforcement Officer, inspected Patel’s properties. 
Thereafter, Killebrew sent Patel a notice of substandard building as well as separate inspection
reports on each of his properties. 
            Patel also testified that he received notice of a meeting of the Everman Building Board of
Appeals (the “Board”) to be conducted on March 5, 1998, which he and his attorney attended. Patel
testified that he could not recall whether his attorney presented evidence other than oral evidence. 
Patel testified that his attorney stated to the Board that many of the defects listed in Killebrew’s
reports were false and requested that Patel be allowed thirty days to address the newly cited
problems. Both Patel and his attorney left the meeting after the consideration of only three of Patel’s
properties, citing the Board’s bias as their reason for leaving. Ultimately, the Board voted to
demolish all twenty of Patel’s properties. The City commenced the demolition process as to eighteen
of Patel’s buildings in April 1998.
            Patel filed the instant suit against the City and Killebrew d/b/a MCA alleging that the
demolition of his properties amounted to a taking without just compensation in violation of his rights
pursuant to Article I, section 17 of the Texas Constitution. As to Killebrew and MCA, Patel alleged
that these defendants were liable for trespass, conversion, and destruction of property. Patel also
raised a procedural due process claim pursuant to Article I, section 19 of the Texas Constitution. 
All defendants jointly filed both traditional and no-evidence motions for summary judgment, to
which Patel responded. Ultimately, the trial court granted the defendants’ motions for summary
judgment and ordered that Patel take nothing. This appeal followed.
 
Standard of Review
            In reviewing a traditional motion for summary judgment,


 this court must apply the standards
established in Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are:
 
              1.           The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law;
 
              2.           In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true;
 
              3.           Every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor.


See id. at 548-49. For a party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c). A movant must either negate at least one essential element
of the nonmovant's cause of action, or prove all essential elements of an affirmative defense. See
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.1995); see also MMP, Ltd.
v. Jones, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts
about the existence of a genuine issue of a material fact are resolved against the movant, we must
view the evidence and its reasonable inferences in the light most favorable to the nonmovant. See
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965). 
We are not required to ascertain the credibility of affiants or to determine the weight of evidence in
the affidavits, depositions, exhibits, and other summary judgment proof. See Gulbenkian v. Penn,
252 S.W.2d 929, 932 (Tex. 1952). The only question is whether or not an issue of material fact is
presented. See Tex. R. Civ. P. 166a(c).
            Once the movant has established a right to summary judgment, the nonmovant has the burden
to respond to the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678-79 (Tex.1979). All theories in support of or in opposition to a motion for summary
judgment must be presented in writing to the trial court. See Tex. R. Civ. P. 166a(c).
 
Malooly Issue
            In his first issue, Patel argues generally that the trial court’s grant of summary judgment must
be reversed because Appellees failed to prove their entitlement to judgment as a matter of law. We
interpret Patel’s first issue as a general assignment of error. See Malooly Bros., Inc. v. Napier, 461
S.W.2d 119, 120 (Tex. 1970); Reese v. Beaumont Bank, N.A., 790 S.W.2d 801, 804 (Tex.
App.–Beaumont 1990, no writ); see also Dubow v. Dragon, 746 S.W.2d 857, 859 (Tex. App.–Dallas
1988, no writ) (where there is no general point of error complaining of the granting of summary
judgment, if there is another possible ground, which is not attacked by point of error, on which the
judgment could have been entered, the judgment must be affirmed); King v. Texas Employers’ Ins.
Ass’n, 716 S.W.2d 181, 182-83 (Tex. App.–Fort Worth 1986, no writ) (because summary judgment
may have been granted, either properly or improperly, on a ground set forth in the motion for
summary judgment, which ground was not challenged by point of error by the appellant, the
summary judgment must be affirmed); Rodriguez v. Morgan, 584 S.W.2d 558, 559 (Tex. Civ.
App.–Austin 1979, writ ref’d n.r.e.) (although the appellant from the summary judgment stated some
specific points of error, the trial court may have based the summary judgment on a ground not
specifically challenged by the appellants by assignment of error or by briefing). For the reasons set
forth below, Patel’s first issue is sustained in part, and overruled in part.
            
Takings Claim
            In his second issue, Patel contends that the trial court erred in granting summary judgment
on his “takings claim” under the Texas Constitution.
Governing Law
            Article I, section 17 of the Texas Constitution provides that “[n]o person's property shall be
taken, damaged or destroyed for or applied to public use without adequate compensation being made
. . . .” Tex. Const. Ann., art. I, § 17; see Knowles v. City of Granbury, 953 S.W.2d 19, 23 (Tex.
App.–Fort Worth 1997, pet. denied). To recover under article I, section 17, a plaintiff must prove
that (1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for
public use. See City of Abilene v. Smithwick, 721 S.W.2d 949, 951 (Tex. App.–Eastland 1986, writ
ref’d n.r.e.). “Inverse condemnation” occurs when property is taken, damaged, or destroyed for
public use without process or without proper condemnation proceedings, and the property owner
attempts to recover compensation. See City of Abilene v. Burk Royalty Co., 470 S.W.2d 643, 646
(Tex. 1971); Allen v. City of Texas City, 775 S.W.2d 863, 864 (Tex. App.–Houston [1st Dist.] 1989,
writ denied).
“Public Use”
            In general, property is taken for a public use only when there results to the public some
definite right or use in the undertaking. See Bay Ridge Util. Dist. v. 4M Laundry, 717 S.W.2d 92,
101 (Tex. App.–Houston [1st Dist.] 1986, writ ref’d n.r.e.). Whether a taking of property is for
public use is a judicial question. See Housing Auth. of City of Dallas v. Higginbotham, 143
S.W.2d 79, 84 (Tex. 1940); see also Davis v. City of Lubbock, 326 S.W.2d 699, 704 (Tex. 1959).
            The City argues that the properties were condemned based on their substandard condition as
a measure to prevent harm to its citizens. The City attempts to distinguish the facts in the instant
case from a scenario wherein a city condemns property to use as a park or government facility, or
from which to otherwise derive some sort of affirmative benefit.



            Patel argues that the orders for the demolition of each of his properties evidence that the
properties were taken for public use. The orders to which Patel refers state, in pertinent part,
 
[T]he Board finds from evidence presented at the public hearing that the buildings are in violation of
the standards set forth in Article IV of Chapter 4 of the Everman City Code and that the defects or
conditions exist to the extent that the life, health, property or safety of the public are endangered.


In support of his argument, Patel cites City of Houston v. Crabb, 905 S.W.2d 669 (Tex.
App.–Houston [14th Dist.] 1995, no writ). In Crabb, the court explained that the term “public use”
includes matters of public health and public safety. Id. at 674. The City has cited no authority in
its brief, nor are we aware of any such authority, that would cause us to conclude that the
interpretation of the term “public use” set forth in Crabb is incorrect. We conclude that the language
in the aforementioned orders for demolition evidences that the properties in question were
demolished for “public use.” As the City’s summary judgment evidence does not contradict the
underlying reason for the demolition, as set forth in its orders, it has failed to negate the evidence
supporting the “public use” element of Patel’s takings claim.
Consent
            Patel next argues that the trial court erred in finding that he consented to the demolition of
his properties. Consent is an affirmative defense to Patel’s takings claim, as to which the City has
the burden of proof. See Crabb, 905 S.W.2d at 674-75.
            The City argues that Patel consented to the demolition of fifteen of his properties by failing
to comply with the terms of the agreed order. It is well established that “a court cannot render a valid
agreed judgment absent consent at the time it is rendered . . . .” Reppert v. Beasley, 943 S.W.2d 172,
174 (Tex. App.–San Antonio 1997, no writ). The record does not indicate that Patel has successfully
challenged the validity of the agreed order. Thus, it follows that he consented to the order. 
            An agreed judgment is contractual in nature; in effect it is a written agreement between
parties, as well as an adjudication. See Sanderlin v. Sanderlin, 929 S.W.2d 121, 122 (Tex.
App.–San Antonio 1996, writ denied). Here, pursuant to the agreed order, Patel was obligated to
“repair [the] property so it is in compliance with all city codes for the City of Everman.” The order
further states, 
 
In the event that each and every unit is not in compliance with the City of Everman City Codes by
February 9, 1998, then in that event this Order and any Temporary Injunction shall expire and the City
of Everman shall be permitted to demolish all units and property listed above without further notice
and without further Court action. 


Thus, if there exists uncontroverted summary judgment evidence supporting that Patel failed to
repair each of the fifteen properties so that they were each in compliance with city codes for the City
of Everman, it is reasonable to conclude that Patel consented to the demolition of these fifteen
properties.



            Patel first argues that the only conditions identified by the City in 1997 that gave rise to the
agreed order were (1) boarded doors and windows and (2) exterior graffiti damage, both of which
were rectified by the designated date, and that these conditions were in the minds of the parties when
the agreed order was entered. Patel further contends that his signature on the agreed order cannot
constitute consent to abide by ordinances that were not in effect at the time he entered into the
agreement.
            When construing an agreed judgment, as with a contract, the court’s primary concern is to
give effect to the written expression of the parties’ intentions, and the judgment should be construed
to give effect to its ordinary meaning and the objective intent of the parties as expressed in the
writing. See Sanderlin, 929 S.W.2d at 123; Harvey v. Harvey, 905 S.W.2d 760, 764 (Tex.
App.–Austin 1995, no writ). In construing an agreed judgment, the judgment will be read as a
whole, see, e.g., Grain Dealers Mutual Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex.1997), and
if its terms are plain and unambiguous, the intent of the parties will be gathered from such terms. 
See Evans v. Williams, 194 S.W. 181, 185 (Tex. Civ. App.–Austin 1916, writ ref’d). An alleged
oral agreement in conflict with the provisions of an agreed judgment is properly disregarded. See
Giraud v. Reserve Realty Co., 94 S.W.2d 198, 198 (Tex. Civ. App.–San Antonio 1936, writ ref’d).
            The agreed order in the instant case is not ambiguous. Patel was obligated to repair the
subject property so that it was in compliance with all city codes for the City of Everman. The
reference to “all city codes” does not support Patel’s interpretation that the parties intended to limit
the repairs to the boarded up doors and windows and the graffiti on the buildings’ exteriors. 
Furthermore, the agreed order did not except Patel from potential changes in the City’s building
ordinances between the date the agreed order was entered and the deadline for compliance set forth
therein. It is axiomatic that our laws are ever-evolving, and the citizenry has an obligation to abide
by the law even as it changes.


 In the instant case, Patel has neither attacked the validity of the
substance of the new ordinances enacted by the City, nor the process by which they were enacted. 
Based on our reading of the agreement, we conclude that the February 9, 1998 deadline for
compliance with the Everman City Codes indicates that the standard for compliance is the applicable
ordinance as it existed at the time of the February 9, 1998 deadline.
            Patel next argues that the evidence does not establish that Patel’s properties were not in
compliance with relevant provisions of the Everman City Codes on February 9, 1998 as Killebrew’s
observations cited in Appellees’ motion for summary judgment were controverted by Patel’s own
deposition testimony. However, as Patel concedes in his brief, his deposition testimony reflects that
he was in violation of at least one provision of the Everman City Codes. Specifically, Patel agreed
with regard to each of the properties subject to the agreed order that the City’s substandard building
declaration was accurate concerning a code violation described as a health hazard related to the
properties’ plumbing. Specifically, Patel acknowledged that there were vacuum breakers missing
on each building’s respective hose bibb. Therefore, we conclude that the summary judgment
evidence establishes that Patel’s buildings were not in compliance with “all city codes,” on or before
the February 9, 1998 deadline as required by the agreed order.
            Patel further argues that the City cannot rely on the agreed order in that the City failed to
comply with its obligations to “reasonably cooperate with Patel and . . . not interfere in the repair
process.” Specifically, Patel argues that the City failed to fulfill its obligations as follows:
 
              1.           Master electrician, Roel Garcia, went to pull electrical permits for Patel’s buildings
in 1998 and was told by a City Employee that he could not use the permits because
the City was going to demolish Patel’s buildings.
 
              2.           Patel was told by Killebrew that he could not enter his buildings or make repairs
and the demolition order was made.


            Where a party does not comply with his obligation under a plain provision in an agreed
judgment, he is not entitled to complain of the failure of the other party to comply with his respective
obligations under the agreed judgment. See Giraud, 94 S.W.2d at 199. Here, Patel’s deposition
testimony reflects that Roel Garcia attempted to secure permits from the City at some time between
February 20, 1998 and April 16, 1998.


 Similarly, it is apparent from the record that the exchange
between Patel and Killebrew outlined above took place after the February 9, 1998 deadline. 
Therefore, since the incidents set forth above occurred subsequent to the February 9, 1998 deadline
mandated by the agreed order, the City was already entitled to demolish Patel’s properties subject
to the order “without further notice and without further Court action.”


 Reading the provisions of
the agreed order in conjunction with one another, Patel’s opportunity to repair his buildings ended
on February 9, 1998. It follows that the City’s obligation to reasonably cooperate with Patel and not
interfere in the repair process ceased on that date as well.
            Finally, Patel argues that he was denied notice of his need to present evidence of repairs, and
thus, his failure to present evidence does not constitute an affirmative act of consent to the City’s
demolition of his properties. Yet, as set forth above, the record reflects that Patel affirmatively
consented to the terms of the agreed order. The record further reflects that Patel did not repair his
buildings so that every unit was in compliance with the City of Everman City Codes by February 9,
1998. As such, pursuant to the terms of the agreed order, the City was permitted to demolish all
units and property listed in the order without further notice and without further court action. The
City expressly stated that it was not waiving its rights under the agreed order by conducting a public
hearing. Patel consented to the demolition of his properties by consenting to the terms of the agreed
order and failing to meet his obligations therein by the February 9, 1998 deadline. Events that took
place subsequent to the February 9, 1998 deadline are not relevant.



            Patel notes that if we conclude that he consented to the demolition, such consent is only
effective as to the properties covered by the agreed order. We agree. As such, we conclude that the
trial court properly held that Patel consented to the demolition of the fifteen properties referenced
in the agreed order.



Nuisance
            Patel further argues that the trial court erred in granting summary judgment in favor of the
City based on the defense of nuisance. The City argues that Patel’s takings claim fails because the
summary judgment evidence demonstrates that Patel’s properties constituted a nuisance as a matter
of law.


 
            Where a plaintiff establishes that a governmental entity intentionally destroyed his property
because of a real or supposed public emergency, the government entity may then defend its actions
by proof of a great public necessity. See Crabb, 905 S.W.2d at 674-75. In other words, the
governmental entity has to show that the property destroyed was a nuisance on the day it was
destroyed. Id. at 675.
            A public nuisance is maintained (1) by act, or by failure to perform a legal duty, (2)
intentionally causing or permitting a condition to exist, (3) which injures or endangers the public
health, safety or welfare. See LJD Properties, Inc. v. City of Greenville, 753 S.W.2d 204, 207 (Tex.
App.–Dallas 1988, writ denied). The government may abate public nuisances by virtue of its police
powers. See id. 
            In its amended motion for summary judgment, the City appended evidence relevant to the
issue of whether conditions existed on Patel’s property at the time of the demolition thereof which
endangered the public health, safety, or welfare. Among the evidence presented is testimony from
Killebrew’s affidavit, summarized as follows:
 
•The roofs on Patel’s apartments had been substantially modified in violation of the Uniform
Building Code such that they posed a threat to any occupants as the construction standards
used in the roofs had not been verified by a building official.
 
•Each of Killebrew’s substandard building reports indicated that the respective building was,
due to the violations chronicled therein, “ . . . a hazard to the public heath, safety and
welfare.” The “violations found on Patel’s properties posed a threat to the public health,
safety and welfare of the citizens of Everman.”
 
•Subsequent to the March 5, 1998 hearing, Patel did not notify Killebrew that he had cured
any of the code violations or provide invoices demonstrating the correction of said violations.


In his deposition testimony, Patel denied the existence of all of the problems set forth in each of
Killebrew’s substandard building reports, save for missing vacuum breakers on a hose bibb, which
Patel testified that he had fixed as to every building prior to its demolition. 
            We iterate that we must review the evidence in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts in the nonmovant's favor. See Nixon,
690 S.W.2d at 548-49. The City attacks Patel’s deposition evidence as conclusory and points out
that it objected to such testimony at the trial court. However, there is no indication that the trial court
sustained the City’s objection to Patel’s testimony or struck Patel’s deposition testimony. Moreover,
the City has not properly brought an issue on appeal challenging the trial court’s consideration of its
objection to Patel’s summary judgment evidence. We are not required to ascertain the credibility
of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other
summary judgment proof. See Penn, 252 S.W.2d at 932. We conclude that Patel’s deposition
testimony raises a fact issue with regard to the existence of the violations cited in Killebrew’s
substandard building reports. Inasmuch as the violations cited in Killebrew’s reports form the basis
of Killebrew’s statement that buildings were “a hazard to the public heath, safety and welfare[,]” the
trial court’s grant of summary judgment on the basis of the city’s defense of nuisance was improper.
Statute of Limitations
            Patel next argues that the trial court erred in finding that his claim was barred by a two-year
statute of limitations.


 Patel contends that his claim is one for inverse condemnation. Where
property has been “taken,” a plaintiff's right to maintain a cause of action would not be barred until
the expiration of the ten-year period necessary to acquire land by adverse possession. Hues v.
Warren Petroleum Co., 814 S.W.2d 526, 530 (Tex. App.–Houston [14th Dist.] 1991, writ denied). 
We initially note that the record does not reflect that the City specially excepted to Patel’s pleadings. 
Thus, we apply a liberal construction of Patel’s pleadings to determine if Patel properly pleaded a
claim for inverse condemnation. See Crabb, 905 S.W.2d at 673. To recover under the theory of
inverse condemnation, the property owner must establish that: (1) the governmental entity
intentionally performed certain acts; (2) that resulted in a taking of property; (3) for public use. 
Waddy v. City of Houston, 834 S.W.2d 97, 102 (Tex. App.–Houston [1st Dist.] 1992, writ denied).
            In the case at hand, Patel averred as follows:
 
Defendant Everman has failed to pay Patel any compensation for the destruction or foreclosure of the
above-referenced buildings. Such failure constitutes a taking, damaging or destroying of Patel’s
property for public use and benefit without adequate compensation in violation of Article I, Secs. 17
and 19 of the Constitution of the State of Texas.



            The City argues that Patel’s case is one related to the “damaging” of property, and thereby,
properly subject to a two-year statute of limitations. However, Patel has pleaded that the City’s
actions amounted to either taking, damaging, or the destruction of his property for public use. Patel
further states in his petition, “To date, all but two of the above-referenced buildings have been
demolished.” The record clearly indicates that the property located at 410 Race Street was
demolished. Patel has pleaded facts that give proper notice of his claim that the City intentionally
demolished his property for public use. A petition is sufficient if it gives fair notice of the facts
relied upon, enabling the defendant to prepare a defense. See Horizon/CMS Healthcare Corp. v.
Auld, 34 S.W.3d 887, 897 (Tex. 2000) (citing Broom v. Brookshire Bros., Inc., 923 S.W.2d 57, 60
(Tex. App.–Tyler 1995, writ denied)) (A petition is sufficient if it gives fair notice of the facts relied
upon, enabling the defendant to prepare a defense.). Thus, we conclude that Patel properly pleaded
a claim for inverse condemnation. See, e.g., Crabb, 905 S.W.2d at 673; Hubler v. City of Corpus
Christi, 564 S.W.2d 816, 824 (Tex. Civ. App.–Corpus Christi 1978, writ ref’d n.r.e.); see also Allen,
775 S.W.2d at 865 (“To be entitled to compensation for “inverse condemnation” under article I,
section 17, appellants must plead that their property has been ‘taken, damaged, or destroyed for or
applied to public use.’”). Therefore, the trial court improperly found that Patel’s claim was governed
by a two-year statute of limitations.
            With respect to his argument that the trial court erred in granting the City’s motion for
summary judgment on its affirmative defense of consent, Patel’s second issue is overruled. The
remainder of Patel’s second issue is sustained.
 
Due Process
            In his third issue, Patel argues that the trial court erred by granting summary judgment in the
City’s favor on his state due process claim. The due process provisions of the Texas Constitution
do not provide for a cause of action for damages, but rather only for direct claims seeking equitable
relief. See Securtec, Inc. v. County of Gregg, 106 S.W.3d 803, 816 (Tex. App.–Texarkana 2003,
no pet.); see also City of Beaumont v. Bouillion, 896 S.W.2d 143, 148-49 (Tex. 1995) (concluding
with regard to speech and assembly clauses, that no historical underpinnings or text of the Texas
Constitution implied a cause of action for damages for unconstitutional conduct); Mitchell v.
Amarillo Hosp. Dist., 855 S.W.2d 857, 872-73 (Tex. App.–Amarillo 1993, writ denied).
            Patel contends that his is a claim in equity requiring compensation.


 Yet, where, like Patel,
a party seeks monetary damages, he seeks a legal remedy, not an equitable one. See Securtec, Inc.,
106 S.W.3d at 816. Further, Patel argues that, in other contexts, courts have found a private cause
of action to exist despite the absence of an express provision for a private right of action. The cases
cited by Patel in support of his proposition, Nixon, 690 S.W.2d at 549 (Tex. 1985), Dann v.
Studebaker-Packard Corp., 288 F.2d 201, 209 (6th Cir. 1961), and Caskey v. Bradley, 773 S.W.2d
735, 738 (Tex. App.–Fort Worth 1989, no writ),


 are inapplicable to the issue before us. As such,
we hold that Patel seeks relief that is unavailable for the City’s alleged violation of his rights under
Article I, section 19 of the Texas Constitution. Patel’s third issue is overruled.
 
Trespass and Conversion Claims
            Patel’s fourth issue concerns his claims of trespass and conversion against Killebrew and
MCA.


 
Res Judicata
            Patel first argues that the trial court erred in granting Appellees’ motion for summary
judgment on their affirmative defense of res judicata. Appellees argue that the United States District
Court for the Northern District of Texas’s order granting summary judgment in Appellees’ favor in
Cause No. 4:99CV982BE; Jayanti Patel v. City of Everman, Tom Killebrew d/b/a Metro Code
Analysts, 2001 WL 11074 (N.D.Tex. Jan. 3, 2001) is res judicata as to Patel’s claims for trespass
and conversion. 
            The doctrine of res judicata is an affirmative defense. See Tex. R. Civ. P. 94. In the case at
hand, since Appellant’s federal lawsuit proceeded to judgment first, we must apply federal principles 
of res judicata. See Fernandez v. Mem’l Healthcare Sys., Inc., 896 S.W.2d 227, 230 (Tex.
App.–Houston [1st Dist. 1995, writ denied) (citing Eagle Properties, Ltd. v. Scharbauer, 807
S.W.2d 714, 718 (Tex. 1990)). Under federal law, res judicata will apply if: (1) the parties are
identical in both suits; (2) the prior judgment is rendered by a court of competent jurisdiction; (3)
there is a final judgment on the merits; and (4) the same cause of action is involved in both cases. 
Id.       
            Here, the parties are identical in both suits. Patel argues that it is clear that no final judgment
on the merits was issued on his trespass and conversion claims by any court whatsoever, let alone
a court of competent jurisdiction. Patel bases his argument on the trial court’s order dismissing his
takings claims for want of jurisdiction. In its order, the federal court stated as follows:
 
The court retains federal questions jurisdiction over Patel’s substantive due process, equal protection
and racial discrimination complaints. Patel’s remaining complaints are dismissed as they are not yet
ripe for determination.


In his response to Appellees’ motion for summary judgment, Patel contended that it was clear that
his claims of trespass and conversion were inherently intertwined with his takings claim, which the
federal court dismissed as not yet ripe. 
Court of Competent Jurisdiction
            As Patel claims that the district court was not a court of competent jurisdiction, we will
address this element of res judicata first. Res judicata, or claim preclusion, bars all claims that were
brought, or could have been brought, in a previous action. Fernandez, 896 S.W.2d at 232 (citing
Langston v. Insurance Co. of N. Am., 827 F.2d 1044, 1047 (5th Cir. 1987)). When a lawsuit is
brought in federal court, and there is no jurisdictional obstacle to advancing state law claims, res
judicata bars any effort to assert the state law claims in a separately filed lawsuit. Fernandez, 896
S.W.2d at 232 (citing Eagle Properties, Ltd., 807 S.W.2d at 718)). When a federal claim and a state
claim are combined in one lawsuit, and derive from a common nucleus of operative facts, a federal
court has the power to adjudicate the state court claim, under the doctrine of pendent jurisdiction. 
Fernandez, 896 S.W.2d at 232 (citing United Mine Workers v. Gibbs, 383 U.S.715, 725, 86 S. Ct.
1130, 1138, 16 L. Ed. 2d 218 (1966)). To determine whether the omitted state claims could have
been brought in the federal action, we must (1) determine whether the federal court possessed
jurisdiction over the omitted claim; and (2) whether the federal court would have clearly declined
to exercise that jurisdiction. Fernandez, 896 S.W.2d at 232 (citing Jeanses v. Henderson, 688
S.W.2d 100, 104 (Tex. 1985)).
            A comparison of Patel’s state court petition and his federal complaint demonstrates that the
facts alleged are virtually the same. More specifically, with respect to his allegations against
Killebrew and MCA, in his federal complaint, Patel alleged as follows:
 
Shortly after the injunction was denied, the City of Everman proceeded to demolish each building
owned by Patel. During this process, Adam Killebrew, acting on behalf of Tom Killebrew, went
through Patel’s buildings knocking holes in Patel’s walls and vandalizing Patel’s buildings.


Similarly, in his petition in the case at hand, with respect to Appellees Killebrew and MCA, Patel
pleaded as follows:
 
In May of 1998, Defendant Metro Code Analysis, L.L.P., by and through Defendant Tom Killebrew,
directed its agents and/or employees to loot and vandalize Patel’s fourplexes which included breaking
light fixtures, windows, and thermostats, and taking doors and electrical boxes.


Based on our reading of Patel’s pleadings in both his federal and state lawsuits, we conclude that
both lawsuits are derived from a common nucleus of operative facts.
            Patel’s argument relates more closely to the question of whether the federal court would have
clearly declined to exercise jurisdiction over his trespass and conversion claims. In its memorandum
opinion dismissing Patel’s takings claims, the court stated as follows:
 
Patel’s claims of an unlawful taking without just compensation are premature. His claims under the
Takings Clauses of the state and federal constitutions must be dismissed for lack of jurisdiction. His
claim of denial of procedural due process, being dependent on the factual development of his takings
claims, is also unripe. Similarly, his complaints regarding Section 214.001 of the Texas Local
Government Code and the Everman City Ordinance governing demolition of substandard properties
are intertwined with his allegations that his property was taken without just compensation and thus not
ripe until his Takings Clause claims are resolved.
 
Dismissal of the foregoing claims, however, does not render federal question jurisdiction nonexistent. 
Patel has raised claims involving federal substantive due process, equal protection, and race
discrimination that exist independent of the Takings Clause. These complaints stem from the City
Council’s vote to raze his property and will remain even if he seeks or recovers just compensation for
the demolition of his buildings. The court retains federal question jurisdiction over Patel’s substantive
due process, equal protection, and racial discrimination complaints.


Thus, Patel contends that his trespass and conversion claims were inherently intertwined with his
takings claim and would have, had he asserted them, been dismissed as well. 
            As set forth in the federal court’s opinion, the claims it retained would remain even if Patel
sought or recovered just compensation for the demolition of his buildings. To recover for
conversion, a plaintiff must prove that (1) the plaintiff owned, possessed, or had the right of
immediate possession of the property, (2) the property was personal property, (3) the defendant
wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. See
Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997); United Mobile Networks, L.P. v.
Deaton, 939 S.W.2d 146, 147-48 (Tex. 1997). To recover for trespass to real property, a plaintiff
must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant
entered the plaintiff’s land and the entry was (a) physical, (b) intentional, and (c) voluntary, and (3)
the defendant’s trespass caused injury to the plaintiff. See Pentagon Enters. v. Southwestern Bell
Tel. Co., 540 S.W.2d 477, 478 (Tex. App.–Houston [14th Dist.] 1976, writ ref’d. n.r.e.). While
Killebrew’s acts as alleged by Patel arose from the same nucleus of operative facts - the City’s
destruction of Patel’s properties - such acts are not intertwined with Patel’s takings claim. Indeed,
Patel has not pleaded in the instant case that Killebrew or MCA are somehow liable under Article
I, section 17. We conclude that the specific allegations giving rise to Patel’s trespass and conversion
claims are not so inextricably intertwined with the allegations giving rise to his inverse
condemnation suit so as to cause us to further conclude that the federal court would have clearly
declined to exercise its jurisdiction thereon.
            Remaining Elements
            The federal courts have adopted the “transactional test” for determining whether two
complaints involve the same cause of action for purposes of res judicata. Fernandez, 896 S.W.2d
at 231 (citing Agrilectric Power Partners, Ltd. v. Gen. Elec. Co., 20 F.3d 663, 665 (5th Cir. 1994)). 
Under this approach, the critical issue is not the relief requested or the theory asserted, but whether
the plaintiff bases the two actions on the same nucleus of operative facts. Id. As set forth above,
based on a comparison of Patel’s pleadings in his federal suit with his pleadings in the case at hand,
we have concluded that the two actions arise from the same nucleus of operative facts.
            Furthermore, the record indicates that subsequent to its dismissal of Patel’s takings claims
and related claims, the trial court entered a final summary judgment as to Patel’s claims for equal
protection, substantive due process, and race discrimination. We hold that the trial court did not err
in granting Appellees’ motion for summary judgment on its affirmative defense of res judicata. 
Patel’s fourth issue is overruled.
 
No-evidence Motion for Summary Judgment
            In his fifth issue, Patel argues that the trial court erred in granting Appellees’ no-evidence
motion for summary judgment. After adequate time for discovery, a party without presenting
summary judgment evidence may move for summary judgment on the ground that there is no
evidence of one or more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The motion must state the elements as to
which there is no evidence. Id.  The court must grant the motion unless the respondent produces
summary judgment evidence raising a genuine issue of material fact. Id. The movant need not
produce any proof in support of its no-evidence claim. See id.; see also Judge David Hittner and
Lynne Liberato, Summary Judgments in Texas, 34 Hous. L. Rev. 1303, 1356 (1998). The motion
must be specific in alleging a lack of evidence on an essential element of a cause of action, but need
not specifically attack the evidentiary components that may prove an element of the cause of action. 
See Denton v. Big Spring Hosp. Corp., 998 S.W.2d 294, 298 (Tex. App.–Eastland 1999, no pet.). 
Once a no-evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the
nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. See Macias
v. Fiesta Mart, Inc., 988 S.W.2d 316, 316-17 (Tex. App.–Houston [14th Dist.] 1999, no pet.). A
no-evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of
probative evidence to raise a genuine issue of material fact as to an essential element of the
nonmovant’s claim on which the nonmovant would have the burden of proof at trial. See Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a
finding rises to a level that would enable reasonable, fair-minded persons to differ in their
conclusions, then more than a scintilla of evidence exists. See Havner, 953 S.W.2d at 711. Less
than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere
surmise or suspicion of a fact, and the legal effect is that there is no evidence. See Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.1983).
            On appeal, we will uphold a no-evidence summary judgment only if the summary judgment
record reveals no evidence of the challenged element, i.e., (a) a complete absence of evidence as to
the challenged element; (b) the evidence offered to prove the challenged element is no more than a
mere scintilla; (c) the evidence establishes conclusively the opposite of the challenged element; or
(d) the court is barred by rules of law or of evidence from giving weight to the only evidence offered
to prove the challenged element. See Taylor-Made Hose, Inc. v. Wilkerson, 21 S.W.3d 484, 488
(Tex. App.–San Antonio 2000, pet. denied) (citing Robert W. Calvert, “No Evidence” and
“Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)).
            In the case at hand, we need not reach the issue of the propriety of the trial court’s order
granting Appellees’ no-evidence motion for summary judgment as to Patel’s claims of trespass,
conversion, or due process as we have concluded that the trial court properly granted Appellees’
traditional motion for summary judgment with regard to such claims. In its brief, the City argues that
the trial court properly granted its no-evidence motion for summary judgment with regard to Patel’s
takings claim as well. Specifically, the City argues that Patel can provide no evidence that (1) his
properties were taken for “public use” and/or (2) the City acted beyond its reasonable exercise of
police power.
            To iterate, in order to recover under article I, section 17, a plaintiff must show that (1) the
government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use. 
See Smithwick, 721 S.W.2d at 951. As set forth above, there is some evidence supporting that
Patel’s properties were taken for “public use.” As to whether the City acted beyond its reasonable
exercise of police power, the City contends that since, as it alleged, Patel’s properties constituted a
nuisance as a matter of law, it “lawfully exercised its police powers by ordering the repair and then
demolition” of the properties. However, since the City had the burden of proving that Patel’s
properties constituted a nuisance as a matter of law, see Crabb, 905 S.W.2d at 674-75, it was not
entitled to move for a no-evidence motion for summary judgment on such a ground. See Tex. R.
Civ. P. 166a(i). Even so, as set forth above, we concluded that the trial court’s grant of summary
judgment on the basis of the city’s defense of nuisance was improper because Patel’s deposition
testimony raised a fact issue as to nuisance. We hold that the trial court incorrectly granted the
City’s no-evidence motion for summary judgment as to Patel’s takings claims inasmuch as such
claims are not otherwise barred by the trial court’s grant of summary judgment in the City’s favor
on its affirmative defense of consent. Patel’s fifth issue is sustained in part.
 
Conclusion
            We conclude that the trial court incorrectly granted summary judgment on Patel’s takings
claim other than as to the City’s affirmative defense of consent, as to which summary judgment was
appropriate. Therefore, we have sustained in part, and overruled in part, Patel’s issues one, two, and
five. We have also overruled Patel’s issues three and four. Accordingly, we reverse the trial court’s
order granting summary judgment in favor of the City and remand the cause for further proceedings
consistent with this opinion with regard to Patel’s takings claims as to the following properties,
which are not subject to the City’s affirmative defense of consent: 403 Lee Street, 410 Race Street,
405 King Street, and 403 King Street. In all other respects, we affirm the trial court’s order granting
summary judgment.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered May 28, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)












COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
JUDGMENT
MAY 28, 2004
 
NO. 12-02-00174-CV
 
JAYANTI PATEL,
Appellant
V.
CITY OF EVERMAN, TOM KILLEBREW
D/B/A METRO CODE ANALYSIS, L.L.P.,
Appellees
____________________________________________________________________________
 Appeal from the 352nd Judicial District Court
 of Tarrant County, Texas. (Tr.Ct.No. 352-183879-00)
____________________________________________________________________________

                                    THIS CAUSE came to be heard on the appellate record, oral arguments, and
the briefs filed herein, and the same being inspected, it is the opinion of this court that there was
error in the judgment of the court below in that it erred in granting summary judgment on Appellant
JAYANTI PATEL’S takings claim on all grounds except as to Appellee CITY OF EVERMAN’S
affirmative defense of consent; in all other respects, the judgment of the trial court is affirmed.
                                    It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below wherein the trial court incorrectly granted summary judgment on Appellant’s
takings claim is reversed, except as to the City’s affirmative defense of consent, and the cause is
remanded for further proceedings consistent with this opinion with regard to Appellant’s takings
claims as to the following properties, which are not subject to the City’s affirmative defense of
consent: 403 Lee Street, 410 Race Street, 405 King Street, and 403 King Street. In all other
respects, the judgment of the trial court is affirmed. It is further ORDERED that the Appellees,
CITY OF EVERMAN, TOM KILLEBREW D/B/A METRO CODE ANALYSIS, L.L.P.,
recover of and from Appellant, all appellate costs expended in this cause for all of which execution
may issue; and that this decision be certified to the court below for observance.
                                    Diane DeVasto, Justice.
                                    Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

THE STATE OF TEXAS
M A N D A T E
*********************************************
TO THE 352ND DISTRICT COURT of TARRANT COUNTY, GREETING: 
            Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 28th day
of May, 2004, the cause upon appeal to revise or reverse your judgment between
 
JAYANTI PATEL, Appellant
 
NO. 12-02-00174-CV; Trial Court No. 352-183879-00
 
Opinion by Diane DeVasto, Justice.
 
CITY OF EVERMAN, TOM KILLEBREW
D/B/A METRO CODE ANALYSIS, L.L.P., Appellees

was determined; and therein our said Court made its order in these words:

            “THIS CAUSE came to be heard on the appellate record, oral arguments, and the briefs filed
herein, and the same being inspected, it is the opinion of this court that there was error in the
judgment of the court below in that it erred in granting summary judgment on Appellant JAYANTI
PATEL’S takings claim on all grounds except as to Appellee CITY OF EVERMAN’S affirmative
defense of consent; in all other respects, the judgment of the trial court is affirmed.

            It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below
wherein the trial court incorrectly granted summary judgment on Appellant’s takings claim is
reversed, except as to the City’s affirmative defense of consent, and the cause is remanded for
further proceedings consistent with this opinion with regard to Appellant’s takings claims as to the
following properties, which are not subject to the City’s affirmative defense of consent: 403 Lee
Street, 410 Race Street, 405 King Street, and 403 King Street. In all other respects, the judgment
of the trial court is affirmed. It is further ORDERED that the Appellees, CITY OF EVERMAN,
TOM KILLEBREW D/B/A METRO CODE ANALYSIS, L.L.P., recover of and from Appellant,
all appellate costs expended in this cause for all of which execution may issue; and that this decision
be certified to the court below for observance.”

            WHEREAS, WE COMMAND YOU to observe the order of our said Court of Appeals for
the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly
recognized, obeyed, and executed.

            WITNESS, THE HONORABLE JAMES T. WORTHEN, Chief Justice of our Court of
Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler,
this the ______ day of __________________, 200____.
 



                                    CATHY S. LUSK, CLERK
 
                                    By:_______________________________
                                         Deputy Clerk