CITY OF HOUSTON, Appellant,

v.

Harrel CRABB, Saundra Griffin, and George McKenzie, Appellees.

No. 14–94–00621–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 27, 1995.

Andrea Chan, Houston, for appellant.

Earl Vickery, Austin, for appellees.

Before YATES, FOWLER, and DRAUGHN,* JJ.

### OPINION

FOWLER, Justice.

This is an appeal from a judgment on a jury verdict awarding appellees damages for the City of Houston's demolishing a house owned by appellees Crabb and Griffin. The jury found that the house was not a public nuisance on the day it was demolished, and

* The Honorable Joe L. Draughn sitting by assignment.

awarded appellees the difference between the market value of the property before and after the demolition of the house, and the reasonable cost of repairs expended by McKenzie, a prospective buyer of the property. Because appellees stated a cause of action for compensation under the Texas Constitution's Takings Clause, the evidence presented supports the jury verdict, and the trial court properly determined the starting date for prejudgment interest, we affirm.

## FACTS

Appellees Harrel Crabb and Saundra Griffin are co-owners of a piece of property located in Houston. In 1981, they sold the property for $30,000 to a man who operated a nursery business. There was a house on the property, which the man gutted for the use of his business, leaving the outer walls intact. In 1985, the nursery owner could not make his payments, so Crabb and Griffin had to foreclose. The nursery owner left some trash and old tires on the property, which Crabb and Griffin did not clean up, because they wanted to sell it again. As time passed, the property fell into disrepair. Although Crabb and Griffin kept the fence around the property locked, children would occasionally break in and play in the house.

In early 1987, Crabb received a notice from the City of a dangerous building hearing. Attached to the notice was a "Major Building Deficiencies Form," which contained a list of potential deficiencies for a structure that could make it dangerous. All of the possible defects were checked on the form, even though Crabb knew the house was not deficient in several of the listed areas. Crabb attended the hearing and told the inspector he intended to secure the building and sell the property. After the hearing, on April 30, 1987, Crabb received the Order of the Building Official (the Order), which contained checks by all the defects listed in the Major Building Deficiencies Form. The Order stated that the building was to be posted immediately as a dangerous building, and gave Crabb fifteen days, until May 15th, to notify the City of his intention to repair or demolish the building. If he did not repair or demolish the building by June 30, 1987,

the City would demolish the building. Crabb sent the City a letter stating he was going to remove the trash, secure the building, and keep it boarded up, all of which he did. He did not inform the City that many of the alleged deficiencies were inaccurate—that had been done at the hearing, to no avail.

One year after the City sent the Order to Crabb, in April 1988, a city appraiser went to the property to complete a form entitled "Condemned Structure Appraisal." The appraiser recommended that the City not destroy the structure, and wrote on the form "DO NOT DESTROY, PROPERTY DOES NEED MAJOR RENOVATION." Unaware that the City still might be considering destroying the building, Crabb and Griffin signed an earnest money contract for the property in August, 1988, with George McKenzie, a roofer and building contractor. McKenzie was going to fix up the house with his own resources and pay them $30,000 for the property. McKenzie had a buyer lined up who was going to buy the property for $48,000 after he finished his work on the house.

McKenzie went to work on the house. He put on a new roof, put in all new walls, and purchased all new fixtures, including a whirlpool bathtub and new hot water heater to install in the house. He also completely relandscaped the yard. The neighbors thought the property was looking "real pretty." All together, McKenzie spent $13,000 of his own money fixing up the property.

Then, on December 22, 1988, without any warning, the City came in and bulldozed down the house, even though one of the demolition workers commented after they had torn down the house that he would have liked to live in the house, and that it "was a pretty little place." The demolition contractor took away all the fixtures and lumber from the demolished house. The demolition occurred almost two years after the City had sent out its Order notifying Crabb of its intent to demolish if he did not repair the building. No other notices were sent or posted on the property, nor was the demolition order filed with the deed records.

After the City destroyed the house, McKenzie refused to buy the property, which was then worth only $5000.

## PRIOR POSTURE

Crabb, Griffin, and McKenzie sued the City of Houston and the demolition contractor, Foursome, Inc., under five legal theories: (1) "wrongful destruction of property," (2) negligence, (3) gross negligence, (4) conversion, and (5) due process violation. The City filed no special exceptions to the pleadings. It answered, claiming that (i) its conduct was an exercise of its governmental functions, and it was therefore immune; (ii) the plaintiffs consented to the demolition, and were estopped from suing for damages; and (iii) the plaintiffs were themselves negligent. The City also filed a counterclaim for the cost of the demolition. Foursome filed a cross claim against the City for indemnification.

The jury returned a verdict that the house was not a nuisance on the day the City demolished it, the difference in the market value of the property immediately before and after the demolition was $38,000, and the reasonable cost of repairs made by McKenzie was $13,000.

The trial court entered judgment that Crabb, Griffin, and McKenzie were to recover $38,000 plus prejudgment interest from the City of Houston. The court also entered take-nothing judgments on the plaintiffs' claims against Foursome, on Foursome's claim against the City, and on the City's counterclaim against the plaintiffs.

The City filed a Motion (1) to disregard the jury answers; (2) to vacate and set aside the judgment; (3) for Judgment Notwithstanding the Verdict; and (4) alternatively, for a modified judgment—all of which the judge denied. The City also filed a separate motion to modify the judgment, asking the trial court to specifically award Crabb and Griffin damages separately from McKenzie. The plaintiffs responded, acquiescing in the motion. However, the trial court did not

sign the proposed modified judgment, and the final judgment stands as originally entered. The City filed a timely notice of appeal; Foursome did not appeal the judgment.[1]

## POINTS OF ERROR

The City of Houston brings either three or four points of error:[2]

(1) The trial court erred in not granting the City's Motion for Judgment Notwithstanding the Verdict.

(2), (3) The trial court erred in awarding damages for the reasonable cost of repairs made by McKenzie because there was no evidence to support the award, and because the trial court submitted an improper jury question on the issue.

(4) The trial court erred in awarding prejudgment interest for the time period prior to the date suit was filed.

Appellees, in addition to reply points, bring one cross point and three conditional cross points. Their cross point asks for sanctions pursuant to TEX.R.APP.P. 84. The conditional cross points address actions this Court should take in the event we reverse the trial court's judgment.

## JUDGMENT NOTWITHSTANDING THE VERDICT

■ In its first point of error, the City argues the trial court erred in failing to grant judgment notwithstanding the verdict. Generally, a complaint on appeal that the trial court erred in refusing to grant a judgment notwithstanding the verdict raises only a "no evidence" point for review. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 241–42 (Tex.1988); *Superior Packing, Inc. v. Worldwide Leasing & Fin., Inc.,* 880 S.W.2d 67, 71 (Tex.App.—Houston [14th Dist.] 1994, writ denied). However, the City's discussion under its point of error does not comport with a "no evidence" claim. Instead, the City seems to be contending that appellees could not recover as a matter of law because they did

---

1. In its brief, the City claims Foursome was non-suited before trial, but the non-suit is not in the record and the trial court rendered judgment for and against Foursome.

2. The table of contents contains three points, but the body of the brief contains four.

not *plead* the elements required to support the jury's verdict.

■ The City argues first that the City is protected by sovereign immunity and appellees may not recover under a tort theory because they failed to plead, prove, and secure findings under the Texas Tort Claims Act that the City acted negligently. This argument is meaningless, however, because the record is clear that the case was not submitted to the jury on the negligence theories.

Second, the City argues that appellees may not recover under article 1, section 17 of the Texas Constitution, the "Takings Clause," because they did not plead a cause of action under article 1, section 17. Article 1, section 17 provides:

No person's property shall be taken, damaged, or destroyed for or applied to the public use without adequate compensation being made, unless by the consent of such person....

Tex. Const. art 1, § 17. Appellees' petition alleged liability on the City's part for "Wrongful Destruction of Property," claiming:

At the time that Defendants demolished Plaintiffs' property, the property was not a public nuisance. Thus, there was no reason for Defendants to demolish it, and they became liable to Plaintiffs for their damages when they wrongfully destroyed the property.

■ Pleadings are to be liberally construed in favor of the pleader, particularly when the complaining party has not filed any special exceptions. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex.1993). Rule 45 of the Texas Rules of Civil Procedure requires that pleadings give fair notice of the claim asserted. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex.1988). The purpose of the fair notice requirement is to provide the opposing party with enough information to enable him to prepare a defense. *Id.; Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982). A petition is sufficient if a cause of action may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifi-

cally alleged. *Boyles*, 855 S.W.2d at 601; *Gulf, Colorado & Santa Fe Ry. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963).

■ Here, although appellees did not specifically cite article 1, section 17 in their petition, it is evident that appellees were asking for damages based on the City's destruction of their property. Because the City did not file special exceptions asking for a clearer statement of the cause of action, we apply a liberal construction of appellees pleadings and find that appellees stated a cause of action for compensation under article 1, section 17 for the destruction of their property.

■ Article 1, section 17 of the Texas Constitution requires the government to pay adequate compensation when private property is taken for public use. The Texas Constitution, by authorizing compensation for the destruction of property, waives a government's immunity from liability. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *State v. Biggar*, 848 S.W.2d 291, 295 (Tex.App.—Austin 1993), *aff'd* 873 S.W.2d 11 (Tex.1994). However, all property is held subject to the *valid* exercise of the police power. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex.1984) (emphasis added); *City of Pharr v. Pena*, 853 S.W.2d 56, 60 (Tex.App.—Corpus Christi 1993, writ denied).

■ The elements of a cause of action under the Takings Clause are: (1) the government intentionally performed certain acts; (2) which resulted in a "taking" of property; (3) for the public use. *Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex.App.—Austin 1994, writ granted); *Kite v. City of Westworth Village*, 853 S.W.2d 200, 202 (Tex. App.—Fort Worth 1993, writ denied); *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied); *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex. App.—Eastland 1986, writ ref'd n.r.e.). *See also Steele*, 603 S.W.2d at 791–92 (laying out the respective burdens of the parties at trial: the plaintiff must show the governmental entity intentionally destroyed the property because of "real or supposed public emergen-

cy;" the government may then "defend its actions by proof of a great public necessity").

In *Steele,* the plaintiffs were away from their home when some escaped convicts hid out in the house. Houston Police Department officers discharged incendiary devices into the house to force the prisoners out of the building, and the house burned to the ground as a result. The plaintiffs sued the City, claiming they were entitled to compensation under article 1, section 17. The trial court granted the City's motion for summary judgment, finding the City was immune from suit under the Tort Claims Act. The supreme court reversed, stating that governmental immunity did not shield the City from a claim for compensation under the Texas Constitution, remanded the case for trial, and delineated the elements to be proved by each party. *Steele,* 603 S.W.2d at 791.

■■■ Applying the above standards to the case before us, we first note that appellees proved that the City, acting through its agent Foursome, demolished their building. They also established that the City's stated justification for doing so was "for the public use," because that term includes matters of public health and public safety such as unsafe buildings constituting nuisances. *See State v. Spartan's Indus., Inc.,* 447 S.W.2d 407, 413 (Tex.1969). In other words, appellees proved the City demolished the building "because of real or supposed public emergency." *Steele,* 603 S.W.2d at 792. The City's burden was to "defend its actions by proof of a great public necessity." *Id.* In essence, the City had to show that the building was a nuisance on the day it was demolished, which it failed to do.

In spite of these failings on its part, the City argues that appellees still cannot prevail because article 1, section 17 requires that they plead and prove (1) their lack of consent to the demolition, and (2) inadequate compensation by the City. The City bases this argument on the language contained in article 1, section 17. The City claims that

Crabb's failure to inform the City that he was going to make substantial improvements to the property amounted to consent to tear down the house.

■■■ Neither party has cited any case that discusses who has the burden on the issues of consent and compensation when a taking is alleged.[3] However, many courts have stated that the three allegations listed above comprise a claim for a taking under article 1, section 17. None of the cases cited in this opinion state that a party must also allege and prove lack of consent and inadequate compensation as basic elements of a "taking" claim. Only one of these cases, *Green Int'l,* 877 S.W.2d at 428, contains a discussion of consent. Consent was made an issue in *Green Int'l* because the plaintiff had entered into a contract with the State and had given products to the State under the contract. The court noted that "there can be only limited application of the taking theory when rights have been voluntarily created by contract." *Id.* at 435. The opinion does not reveal who raised the issue of consent. Moreover, even though the court discussed the issue of consent, it did not state that the plaintiff had the burden to prove the lack of consent.

The City cites us to *Hightower v. City of Tyler,* 134 S.W.2d 404 (Tex.Civ.App.—El Paso 1939, writ ref'd) as supporting its position that consent must be pled and proved by the plaintiff. *Hightower* does not stand for this proposition. The Court did not discuss, even obliquely, who has the burden of proving consent.

As a general rule, it makes more sense to require a defending party to prove an affirmative act, such as consent or payment, than to require the plaintiff to prove inaction, such as the failure to pay or to give consent.[4] We think the general rule is appropriate in this case. We therefore conclude that consent and compensation are affirmative defenses that must be pled and proved by the govern-

---

**3.** The City is not claiming that it paid appellees for the destruction of the property. It is merely claiming that lack of compensation is an element of a cause of action under the takings clause and must be alleged in the petition. Although the plaintiffs alleged that they were damaged, they

did not plead either lack of consent or inadequate compensation.

**4.** Payment already is considered an affirmative defense in Texas. *See* Tex.R.Civ.P. 95.

mental authority. The City did not plead consent or compensation as defenses or request jury questions on consent or compensation, and the evidence certainly does not establish consent or compensation as a matter of law. If anything, the evidence shows just the opposite.

In summary, appellants established the elements necessary for a recovery under the Takings Clause, and the City failed to prove it validly exercised its police power, i.e. that the house was a nuisance. The City's first point of error is overruled.

## REASONABLE COST OF REPAIRS

In its second and third points of error, the City contends that the trial court erred by awarding appellees the value found by the jury to represent the reasonable cost of repairs made on the property by George McKenzie, first because they claim that no evidence supports the jury's verdict, and second, because the jury instruction was improper.

■ Initially, we note that although the City's third point of error contends the trial court submitted "an improper jury question," the body of the brief contains no argument in support of this point of error. A point of error not supported by argument or authorities is waived. Tex.R.App.P. 74(f); *Hunter v. NCNB Texas Nat'l Bank*, 857 S.W.2d 722, 725 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Consequently, we overrule the City's third point of error.

■ The City contends in its second point of error that no evidence supports the jury's finding on the issue of the reasonable cost of repairs made by George McKenzie. In reviewing a no evidence claim, the appellate court must consider only the evidence and inferences which tend to support the verdict, and disregard all evidence and inferences to the contrary. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992); *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). The findings of fact must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979).

There is more than a scintilla when the evidence creates more than a mere surmise or suspicion of its existence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

■ The jury was asked to "Find the reasonable cost of the repairs made on the property by George McKenzie before the demolition of the structures." The jury answered "$13,000." The appellees produced the deposition of George McKenzie at trial, in which he testified that he expended $13,000 of his own money to remodel and fix up the house. This evidence was completely uncontroverted by the City. We hold this is more than a scintilla of evidence to support the jury's finding. The City's second point of error is overruled.

## PREJUDGMENT INTEREST

In its fourth point of error, the City contends the trial court erred in awarding prejudgment interest for the period prior to December 21, 1990, the day the suit was filed.

Judgments in property damage cases must include prejudgment interest. Tex.Rev.Civ. Stat.Ann. art. 5069–1.05(6) (Vernon Supp. 1995). Prejudgment interest begins to accrue on the 180th day after the date the defendant receives written notice of a claim, or on the day the suit is filed, whichever occurs first. *Id.* The City contends that nothing in the record indicates on what day, if any, the City received written notice of appellees' claim. The City is incorrect.

■ The jury came back with a verdict on December 1, 1993. On January 27, 1994, appellees filed a Motion for Entry of Judgment. Attached to the motion was a copy of a letter, dated March 15, 1989, reciting that appellees "hereby give to the City of Houston, the Mayor of the City of Houston, and the Houston City Counsel written notice, duly verified, of their claim for damages...." At the end of the letter is a certification by the attorney of record for appellees that a copy of the letter was hand-delivered by the attorney to each of the addressees on March 15, 1989. The Motion for Entry of Judgment asked for interest beginning on September

11, 1989—180 days after the date the letter was delivered to the City.

The trial court therefore correctly assessed prejudgment interest from September 11, 1989, and not from December 21, 1990, the date the suit was filed. Art. 5069–1.05(6). The City's fourth point of error is overruled.

### SANCTIONS UNDER RULE 84

■ Appellees bring a cross point, asking this Court to assess sanctions pursuant to TEX.R.APP.P. 84. We have addressed this rule very recently in *Color Tile, Inc. v. Ramsey,* 905 S.W.2d 620, 624 (Tex.App.—Houston [14th Dist.] 1995, no writ h.). We quote:

> Rule 84 provides that the appellate court may award damages when the appellant takes an appeal for delay and without sufficient cause. However, appellate courts only assess sanctions where an appeal could have been taken only for purposes of delay and where no reasonable hope of reversal exists. *Valenzuela v. St. Paul Ins. Co.,* 878 S.W.2d 667, 671 (Tex.App.—San Antonio 1994, no writ). In determining whether sanctions for delay are appropriate, we view the record from the point of view of the advocate at the time the appeal was taken to determine whether reasonable grounds existed to believe the case should be reversed. *Olmos v. Pecan Grove Mun. Util. Dist.,* 857 S.W.2d 734, 742 (Tex.App.—Houston [14th Dist.] 1993, no writ) (quoting *Ambrose v. Mack,* 800 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied)). We apply Rule 84 only with prudence, caution, and after careful deliberation. *Francis v. Marshall,* 841 S.W.2d 51, 54 (Tex.App.—Houston [14th Dist.] 1992, no writ).

> Appellate courts are reluctant to sanction parties except in truly egregious circumstances.

This is not one of those circumstances. Appellees' first cross point is overruled. We have no need to address the remainder of appellees' cross points, as they are conditional upon our reversing the case.

The judgment of the trial court is **AFFIRMED.**