# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-06-00604-CV

---

**Mary Stephens, Life Estate and Executor, Charles M. Stephens Farm, Appellant**

**v.**

**LCRA Transmission Services Corporation, Appellee**

---

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 15,922, HONORABLE C. W. DUNCAN JR., JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Mary Stephens sued LCRA Transmission Services Corporation (LCRA-TSC) seeking over $1.4 million in damages. The district court granted summary judgment in favor of LCRA-TSC as to all of Ms. Stephens's claims without stating the grounds. Stephens appealed, contending that the district court erred in granting summary judgment because "Plaintiffs had previously established as a matter of law that the evidence . . . was sufficient to raise a genuine issue of material fact as to each element of Plaintiff's cause of action," that the district court ignored her evidence, and that LCRA-TSC's "no evidence" grounds were "not sufficiently specific in challenging the evidentiary

support for the element of causation."[1]  We conclude that the district court did not err in granting summary judgment on this record, and will affirm the judgment.

Ms. Stephens's central allegation is that LCRA-TSC caused her property damage and mental anguish in connection with its cutting of trees and brush near LCRA-TSC power lines on her property during June and November of 2004.  It is undisputed that LCRA-TSC power lines run through Stephens's property and that, beginning in the 1920s, the company or its predecessors held an easement for "an electrical transmission and distributing line . . . [and] the right to remove from said lands all trees and parts thereof, or other obstructions, which endanger or may interfere with the efficiency of said line or its appurtenances."  Stephens argues that the easement had been voided in 2002 and that LCRA-TSC acted illegally in entering her property and cutting her trees. Alternatively, Stephens contends that the extent of LCRA-TSC's tree-cutting—which, she urges, entailed clear-cutting dozens of native pecan trees and denuding areas "like a bald head"—went far beyond previous utility tree-trimming and exceeded LCRA-TSC's rights under the easement.  This destruction of vegetation, Stephens further alleges, caused serious erosion on the property.  Stephens also pled that LCRA-TSC's "heavy machinery" tore up approximately 600 feet of road on the property, rendering it unusable between November 1, 2004 and January 20, 2005.

---

[1]  Ms. Stephens has filed a brief, with an appendix, plus numerous motions that present arguments.  Some of these filings contain or reference matters outside the summary-judgment record. In our analysis, we have considered all of Ms. Stephens's filings to the extent her arguments were preserved in the district court and concern matters within the summary-judgment record. *See* Tex. R. App. P. 33.1.  Because each motion either echoes the arguments already made in her brief, concerns matters outside the record, or otherwise seeks relief to which Ms. Stephens is not entitled, we have overruled each motion by separate order.

Ms. Stephens's claims implicate LCRA-TSC's sovereign immunity. The LCRA possesses sovereign immunity: it is a conservation and reclamation district created by statute, *see* Act of Nov. 10, 1934, 43rd Leg., 4th C.S., ch. 7, § 2(j), 1934 Tex. Gen. Laws 19, 21 (current version at Tex. Spec. Dist. Code Ann. §§ 8503.001-.031 (West Supp. 2007)), and the LCRA-TSC is its transmission service provider affiliate created under chapter 152 of the water code. *See* Tex. Water Code Ann. §§ 152.001-.302 (West 2004 & Supp. 2007); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D) (West 2005) ("governmental unit" under tort claims act includes an "institution, agency, or organ of government the status or authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution."). Ms. Stephens's claims for monetary damages against LCRA-TSC are thus barred by sovereign immunity unless the state has expressly waived that immunity. *See, e.g.*, *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001).

Invoking article I, section 17 of the Texas Constitution, Ms. Stephens asserts a claim for inverse condemnation of her property. *See* Tex. Const. art. I, § 17. She complains of "easement violation"; "severe, permanent, irreversible property damage"; "obstruction of agricultural operation"[2]; and what she terms LCRA-TSC's "attrition" against her, or mental anguish. Because article I, section 17 of the Texas Constitution entitles a property owner to compensation for the taking, damaging or destruction of his property for public use, sovereign immunity is not a shield

---

[2] This component of damages appears to include the alleged lost use of the road, which impacted the use of the property as a deer lease, and the effect of erosion on cattle operations.

3

against an inverse condemnation action brought under that provision. Tex. Const. art. I, § 17[3]; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). To prevail on her inverse condemnation claim, Ms. Stephens was required to prove that a governmental actor acted intentionally to take or damage her property for a public use. *See Holland*, 221 S.W.3d at 643. Furthermore, because the right to compensation under article I, section 17 applies only to the taking, damage, or destruction of a person's property for public use "unless by the consent of such person," consent is an affirmative defense to an inverse condemnation claim. *See* Tex. Const. art. I, § 17; *City of Houston v. Crabb*, 905 S.W.2d 669, 674-75 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

In its summary-judgment motion, LCRA-TSC asserted that it was entitled to judgment as a matter of law on Stephens's inverse condemnation claim because its summary-judgment evidence established that it acted within its rights under the easement when cutting the trees and brush in question. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (consent may be based on express easement); *see also Holland*, 221 S.W.3d at 643-44 (when government acts pursuant to colorable contract rights, it lacks necessary intent to take under

---

[3] Article I, section 17 provides:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

Tex. Const. art. I, § 17.

its eminent-domain powers).  LCRA-TSC also contended that there was no evidence it acted with intent to cause any of the incidental or consequential damages that Ms. Stephens alleges resulted from its tree-removal activities under the easement, such as erosion.  *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004).  LCRA-TSC also sought summary judgment on grounds that, among others, Ms. Stephens failed to plead a waiver of sovereign immunity under the tort claims act and presented no evidence that her claims fell within any waiver.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021, .025 (West 2005).  Specifically, LCRA-TSC challenged whether there was any evidence of "property damage, personal injury, or death aris[ing] from the operation or use of a motor vehicle or motor-driven equipment" or "personal injury or death . . . caused by a condition or use of tangible personal or real property."  *Id*. § 101.021.

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  LCRA-TSC raised both "traditional" and "no-evidence" grounds in its motion for summary judgment.  Under the former standard, summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).  If the movant can show that it is entitled to judgment as a matter of law, the burden

5

shifts to the non-movant to present evidence raising a fact issue to avoid summary judgment. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-549 (Tex. 1985).

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the non-movant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

Because the district court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the district court are meritorious. *Knott*, 128 S.W.3d at 216.

Turning first to LCRA-TSC's ground that it was acting within its rights under the easement, LCRA-TSC attached summary-judgment evidence that included the affidavits of Kelly Wells and Craig Johnson. Wells, LCRA's Supervisor of Real Estate Services, testified concerning LCRA-TSC's easement through Ms. Stephens's property. Attached to her affidavit was an easement dated July 18, 1926, with A.B. Miller and others as grantor and Texas Public Utilities Company as grantee, recorded in the Lampasas County deed records. The conveyance included:

> an easement or right-of-way for an electrical transmission and distributing line, consisting of variable numbers of wires, and all necessary and desirable appurtenances (including towers or poles made of wood, metal, or other materials, telephone and telegraph wire, props and guys), at or near the location and along the general course now located and staked out by the said Company over, across and upon the following described lands . . . [metes and bounds description].
>
> Together with the right of ingress and egress over my (our) adjacent lands to or from said right-of-way for the purpose of constructing, reconstructing, inspecting, patrolling, hanging new wire on, maintaining and removing said line and appurtenances, the right to relocate along the same general direction of said lines; *the right to remove from said lands all trees and parts thereof, or other obstructions, which endanger or may interfere with the efficiency of said line or its appurtenances*; and the right of exercising all other rights hereby granted.

(Emphasis added). Wells explained that the easement's metes and bounds description "encompasses that portion of what is known as transmission line T-154 across the Stephens property in Lampasas County." Also attached was a copy of a Transfer and Assignment from Texas Power and Light Company to the LCRA, dated August 31, 1939, and a January 1, 2002 Transfer and Assignment

7

from LCRA to LCRA-TSC. Wells explained that these conveyances were "the operative transfer of all easements on transmission line T-154, including the Miller easement."

Johnson averred that he was the LCRA's Area Supervisor for its Line Maintenance Authority and had been a certified arborist since 1992. He explained that he had worked for the LCRA since 1997, and "[d]uring that time . . . have supervised and worked on inspecting and maintaining existing electric transmission lines owned by LCRA and . . . LCRA-TSC."[4] Johnson elaborated that, "Part of the job of maintenance of transmission lines is to clear vegetation from the transmission line easements and rights-of-way . . . to prevent any possible, inadvertent paths to ground for the electric currents in the electric conductors, clearing space for maintenance and repair crews to have access to support structures, such as electric transmission towers, and to clear the right-of-way to allow vehicle and foot traffic by transmission line inspectors and patrolmen."

Johnson recounted a series of events related to LCRA-TSC's work on Ms. Stephens's property in 2004:

> In June 2004, LCRA-TSC crews were performing routine maintenance on the electric transmission easement known as T-154. That work entailed some mowing, tree cutting, and shredding in the right-of-way to obtain access to a transmission tower. The mulch that resulted from this maintenance was spread across the Stephens property at the top of a hill. Ms. Stephens began complaining that the removal of the trees and brush caused erosion on her property. In October 2004, after some heavy rains, LCRA-TSC personnel inspected her property and did not notice anything out of the ordinary. The area she pointed out is in a natural drainage and was not any more unusual than any hill country area with the underbrush removed.

---

[4] Johnson added that he had done similar work for several other electric utilities beginning in 1989.

8

Ms. Stephens also complained that her roads were eroding.  So, in an effort to satisfy her, the crews filled in the road and smoothed it out.  She continued to complain, so crews did some more work, placing rocks on the side of the road to cut down on erosion and installing a culvert.  None of this work was necessitated by the action of the crews.  The eroded areas were not even in the transmission line right-of-way.  In other words, LCRA-TSC crews did not cause any damage to the road, nor did they cause erosion of the road.

In October 2004, LCRA-TSC crews returned to cut larger trees that had grown in the easement near the river.  I was present when the work was performed.  Some large trees, including pecans, were removed because of the danger of their interfering with the transmission line and right-of-way.  Trees were removed which were already dangerously close to the electric conductors and others which, if left uncut, could grow into the danger area.  Based on the species of trees, their location in relation to the electrical conductors, the height of the electrical conductors from the ground, and the potential for trees to grow over time into a height that would interfere with the conductors, there is no doubt that the trees which were removed from the Stephens property would have created the danger of an electrical contact to ground in time.  For example, elms and hackberries were removed from the area near the top of the hill because they could quickly grow into the conductors.  Trees near the river were already close enough to interfere with the conductors.

Johnson further explained:

The danger area is an area not just directly under the electric conductors [but] . . . encompasses an area where the branches of trees could come into close proximity with the conductors even if the trunks of the trees are on the outer edge of the easement.  A tree branch does not have to actually touch the electrical conductor in order to cause a short circuit.  The area of proximity also includes the area where the conductors could sway in high winds or sag in warm weather.  Other trees, such as short junipers, were left on the side of the hill within the easement area, because they would not have the potential to interfere with the efficiency of the transmission line or impair LCRA-TSC crews in utilizing the right of way for inspections and repair.

Johnson added,

All of the vegetation, including pecan and other trees, that were cut or trimmed on the Stephens property were removed because of the danger that they could interfere

with the electric conductors, the electric transmission support structures or they obstructed the ability of LCRA-TSC crews to inspect, patrol, maintain or reconstruct the transmission line. Based on my experience and knowledge, all of the vegetation that was removed from the Stephens property was necessary to prevent possible interference with the electric line and right-of-way.

Attached to Johnson's affidavit were seven photographs, which Johnson testified were true and accurate representations of the trees along the easement on the Ms. Stephens property. Five of the photos showed the trees before cutting. According to Johnson, those photos "clearly show that the trees had grown to such an extent that they could interfere with the electric transmission conductors." The remaining two photos depicted the easement after the cutting and, as Johnson indicates, "show that not all of the trees had to be removed to maintain the efficiency of the transmission line and right-of-way."

Johnson further averred that "[d]espite Ms. Stephens'[s] claims, there is no evidence of erosion caused by the cutting of trees" and that "LCRA-TSC certainly did not intend to damage or destroy any property outside the easement, nor was any other damage considered to be a likely result of cutting and removing trees from the easement."

This summary-judgment evidence meets LCRA-TSC's burden of establishing that its tree- and brush-clearing activities were within its rights under the easement. *See DeWitt Cty Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100-01 (Tex. 1999). In response to LCRA-TSC's motion, Ms. Stephens did not present any evidence meeting the requirements for summary-judgment proof. We acknowledge that, in the district court, Ms. Stephens filed several hundred pages of pleadings—often handwritten—various unauthenticated photographs and documents, and witness statements or "reports" not meeting the requirements for summary-judgment affidavits. We also

10

acknowledge that Ms. Stephens—who states that she is over ninety years of age—has represented herself throughout these proceedings. It is apparent from the record that Ms. Stephens believed her filings alone established her entitlement to the damages she claimed and necessarily sufficed as a response to LCRA-TSC's summary-judgment motion. However, these filings did not meet the requirements for summary-judgment proof. *See* Tex. R. Civ. P. 166a(c), (f). On appeal, Ms. Stephens complains that the district court disregarded her evidence. Under the governing law, the district court did not err in its ruling. Rather, though not unsympathetic to Ms. Stephens's situation—and having cautioned her regarding the risks of proceeding without counsel in a case of this complexity—the district court complied with its duty to apply the same legal standards to Ms. Stephens that govern all litigants, whether represented or unrepresented. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel."). We are bound to do the same.

Ms. Stephens also argues that the easement is void due to the effect of a Special Warranty Deed, dated January 1, 2002, through which LCRA conveyed certain property to LCRA-TSC. The sole summary-judgment evidence regarding this deed or its effect is Wells's testimony that the deed conveyed only property in which LCRA had fee title, and did not apply to Ms. Stephens's property.[5] The district court did not err in granting summary judgment on this ground.

---

[5] Both parties attach copies of the deed to their briefs and, while not properly part of the summary-judgment record, we observe that the instrument explicitly applied solely to property owned by LCRA in fee simple and excluded "[e]asements and right-of-ways in third parties."

11

Similarly, in response to LCRA-TSC's no-evidence grounds regarding the intent element of her inverse condemnation claim or the existence of a waiver of sovereign immunity, Ms. Stephens did not present evidence meeting the requirements for summary-judgment proof. She does argue that LCRA-TSC's motion was "not sufficiently specific in challenging the evidentiary support for the element of causation." To the extent she is referring to LCRA-TSC's no-evidence grounds regarding the intent element of Stephens's inverse condemnation claim and the existence of a sovereign immunity waiver, we conclude that LCRA-TSC was sufficiently specific in stating those grounds. The district court did not err in granting summary judgment on these grounds.

As these summary-judgment grounds are dispositive of Ms. Stephens's claims, we affirm the district court's final judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 17, 2008