IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-0257
════════════
 
City of Dallas, 
Petitioner,
 
v.
 
Heather Stewart, 
Respondent
 
════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth 
District of Texas
════════════════════════════════════════════
 
 
Argued February 
16, 2010
 
 
               
Justice Johnson, joined by 
Justice Wainwright, Justice Green, and Justice Guzman, 
dissenting.
 
 
       The 
finding by Dallas’s Urban Rehabilitation Standards Board (URSB) that Heather 
Stewart’s property was a nuisance, when affirmed by the trial court, should have 
determined the nuisance question and precluded its relitigation. Because the Court holds otherwise, I 
respectfully dissent.
I. General
Statutory 
requirements afford significant safeguards to property owners whose property a 
city seeks to abate as a public nuisance. See Tex. Loc. Gov’t Code chs. 54, 214. 
Stewart does not claim that Dallas’s ordinances failed to comply with those 
requirements; neither does the Court. Stewart simply claims that she is 
constitutionally entitled to an entirely new consideration of whether her 
property was a nuisance—a trial de novo—instead of the consideration by the URSB 
with judicial review under the substantial evidence standard. The Court agrees; 
I do not.
A. Law
            
The statutory framework providing abatement of public nuisances is 
detailed and comprehensive. The Local Government Code specifies that 
municipalities may provide for abatement of certain types of 
buildings:
(a) A municipality may, by 
ordinance, require the vacation, relocation of occupants, securing, repair, 
removal, or demolition of a building that is:
(1) dilapidated, substandard, or unfit for human 
habitation and a hazard to the public health, safety, and welfare;
(2) regardless of its 
structural condition, unoccupied by its owners, lessees, or other invitees and 
is unsecured from unauthorized entry to the extent that it could be entered or 
used by vagrants or other uninvited persons as a place of harborage or could be 
entered or used by children; or
(3) boarded up, fenced, or 
otherwise secured in any manner if:
(A) the 
building constitutes a danger to the public even though secured from entry; 
or
(B) the means used to secure the building are inadequate to 
prevent unauthorized entry or use of the building in the manner described by 
Subdivision (2).
Id. § 214.001(a). A city governing body is authorized 
to appoint a building and standards commission to hear cases concerning alleged 
violations of ordinances. Id. § 54.033(a). The 
commission is afforded independence in fulfilling its functions: members are 
removable only for cause on written charge and the member is entitled to a 
public hearing on the removal issue. Id. 
§ 544.033(c). The commission must adopt rules and procedures for use 
in hearings and provide “ample opportunity for presentation of evidence and 
testimony by respondents or persons opposing charges brought by the municipality 
or its building officials.” Id. § 54.034(b), 
(d). Further, the chair of the reviewing panel has the authority to 
administer oaths and compel attendance of witnesses. Id. A city may 
provide that if property is determined by the commission to be in violation of 
city ordinances and the property is not timely brought into compliance or 
demolished by the owner, then the property is subject to abatement by the 
municipality. Id. §§ 214.001(d), (h), (i), (j), (m). As relevant to this matter, Dallas’s 
ordinances conformed to the statutory provisions. E.g., 
Dallas Tex. Code §§ 27-6 to -9.[1]
B. The 
Hearings
Pursuant to the 
Local Government Code and Dallas’s ordinances, the URSB gave Stewart notice of 
the alleged code violations regarding her property. The URSB then held an 
evidentiary hearing concerning the allegations that Stewart’s house was an urban 
nuisance.
Dallas’s 
ordinance defined “urban nuisance” as follows:
URBAN NUISANCE means a premises or structure that is 
dilapidated, substandard, or unfit for human habitation and a hazard to the 
public health, safety, and welfare.
 
Dallas 
Tex. Code § 
27-3(24). 
See Tex. Loc. Gov’t Code 
§ 214.001(a)(1). After hearing evidence on 
September 24, 2001, the commission found based on a preponderance of the 
evidence that Stewart’s house was an urban nuisance as defined in section 
27-3(24) of the Dallas City Code. Stewart did not appear at the hearing, but 
after the order was entered she requested a rehearing and filed a plan for 
repairing the house to remedy the specified code violations. The URSB held 
another hearing on September 23, 2002. The transcript of the second hearing 
shows that Stewart and her mother appeared and gave testimony contesting the 
nuisance allegations. The City presented evidence that no substantial repairs 
had been made to Stewart’s property since the first hearing. As a result of the 
second hearing the URSB affirmed its September 24, 2001 order.
C. The 
Lawsuits
      As she was 
authorized to do by statute and Dallas’s ordinances, Stewart timely appealed to 
the district court. She made several arguments before the district court, but 
she did not, at that time, argue review of the URSB’s determination under the 
substantial evidence standard violated her constitutional rights. She alleged 
that (1) the URSB’s decision was not reasonably supported by substantial 
evidence; (2) the URSB actions denied her “due process of law and the right to 
equal protection of the law, as guaranteed by the Constitutions of the United 
States and the State of Texas in that [Stewart] has not been served an order 
specifying in detail the findings of the Board” (emphasis added); (3) the 
URSB exceeded its statutory authority because it did not apply the correct 
standards in making its ruling; (4) the procedures of the URSB were unlawful in 
that Stewart was denied the right to cross-examine a city expert witness and a 
third party witness; and (5) the URSB ignored the evidence and its decision was 
arbitrary, capricious, and an abuse of discretion.
      After the City 
demolished the property, Stewart amended her pleadings to allege that (1) the 
URSB’s decision was not reasonably supported by substantial evidence; (2) there 
were “Errors in Procedure and Due Process as to Order and Demolition” because 
the URSB did not follow the notice procedures in section 27-13 of Dallas’s 
ordinances before demolishing her property; (3) demolition of her property was 
wrongful because there was not substantial evidence to support the URSB’s order; 
and (4) the demolition of her property was an unlawful government action, 
comprising a “taking” of her property under the Fifth and Fourteenth Amendments 
of the federal constitution and article 1 of the Texas Constitution, and was 
“without due process of law.”
      After the trial 
court severed the administrative appeal from her other claims, Stewart pled that 
she was entitled to damages for the wrongful destruction of her property based 
on “constitutional claims associated with” the City’s destruction of her home. 
As the basis for damages, she alleged generally that demolition of the property 
as a public nuisance was wrongful, and her claims were brought under “the Texas 
Constitution, Article 1, Sections 17 and 19.” She specified that the bases for 
her general claim of unconstitutionality were (1) the property was not a 
nuisance in fact and its destruction “violated the protections afforded 
Plaintiff by the Texas Constitution and Texas Government Code”; (2) whether her 
property was a nuisance was a justiciable question to 
be determined only by the district court or jury trying the case; and (3) Dallas 
did not give proper notice before demolishing the property, which violated her 
right to due process. She sought damages for value of the property and mental 
anguish.
      The district 
court was authorized by statute to conduct a substantial evidence review, and to 
“reverse or affirm, in whole or in part, or . . . 
modify the decision brought up for review.” Tex. Loc. Gov’t Code § 214.0012(f). After severing 
Stewart’s appeal of the URSB’s order from her constitutional claims, the court 
affirmed the URSB order without altering or modifying it. Stewart did not appeal 
that ruling.
      In this severed 
matter the trial court submitted two liability questions and damages questions 
contingent on “Yes” answers to the liability questions. The first liability 
question, question one, charged the jury to find from a preponderance of the 
evidence if Stewart’s property constituted a public nuisance at the time it was 
demolished by the City. The second liability question, question three, asked if 
the city failed to comply with section 27-13 of its ordinances in proceeding 
with the demolition of Stewart’s property. Stewart’s only objection to the 
charge was to request that the court define “public nuisance” in question one 
according to the definition in Dallas’s ordinance. The jury answered question 
one “No” and found the market value of the structure was $75,707.67 at the time 
it was demolished. Regarding Stewart’s due process claim, the jury answered 
question three “No.” Stewart moved the trial court to render judgment in her 
favor on the verdict of the jury, which it did. Thus, as to the nuisance issue 
the jury charge submitted the same question to the jury that the URSB previously 
answered, and the jury made its findings by a preponderance of the evidence—the 
same standard by which the URSB made its findings.
III. The Court’s Holding
      The Court 
recognizes and agrees that the government does not commit a taking when it 
abates a public nuisance. ___ S.W.3d ___. But the Court 
allows Stewart to circumvent the URSB’s determination that her house was a 
nuisance and the trial court’s affirmation of that determination pursuant to its 
substantial evidence review despite the fact that Stewart has never directly 
attacked the validity of either the statutes involved or Dallas’s ordinances 
that (1) define a nuisance, (2) allow determination of the factual nuisance 
issue by the URSB pursuant to specified procedures and the definition of 
nuisance prescribed by the Legislature, and (3) provide for substantial evidence 
review by a trial court that is authorized to reverse or modify the URSB’s order 
in whole or in part. Nevertheless, her position clearly is that they are 
invalid: “The question as to whether or not [Stewart’s] home was a nuisance is a 
justiciable question to be determined alone by a court 
or jury trying the case.” Put differently, she maintains that she is entitled to 
a de novo determination of the nuisance question despite not having challenged 
the substance of either the statutes or Dallas’s ordinances providing procedural 
and substantive safeguards for persons whose property is alleged to be a 
nuisance, define the term nuisance, authorize judicial review of the URSB’s 
quasi-judicial nuisance finding and judicial modification of the URSB 
order.
      Stewart and the 
Court mainly base their positions on City of Houston v. Lurie, 224 S.W.2d 
871 (Tex. 1949) and several cases preceding Lurie: City of Texarkana 
v. Reagan, 247 S.W. 816 (Tex. 1923), Crossman v. City of Galveston, 
247 S.W. 810 (Tex. 1923), Stockwell v. 
State, 221 S.W. 932 (Tex. 1920). Based on these cases the Court holds that 
the URSB’s determination that Stewart’s house was an urban nuisance as defined 
by the City ordinance—which reflects the statutory definition—could not stand 
absent “full judicial review.” ___ S.W.3d at 
___.
      In Lurie, 
Aneeth Lurie refused to tear down two buildings she 
owned after the city council determined the buildings were nuisances. 
Lurie, 224 S.W.2d at 873. An ordinance provided 
that if an owner failed to comply with an order of the city council, “the city 
attorney ‘shall file suit in the proper court against such owner and obtain the 
necessary orders and process of said court to enforce the orders of the city 
council.’” Id. The ordinance did not provide for judicial review of the 
council’s determination that a property was a nuisance. Pursuant to the 
ordinance, the city attorney sued Lurie to enforce the council’s order. 
Id. The trial court submitted the issue to the jury, which found only one 
of the two buildings was a nuisance. Id. The 
trial court granted a JNOV, rendered judgment that both buildings were 
nuisances, and ordered their demolition. Id. The court of appeals 
reversed for jury charge error. Id. In this Court, the City argued that 
the trial court should not have even submitted the issues to the jury. Id. at 873-74. Rather, it argued the trial court 
should have rendered judgment for the City, or alternatively, instructed a 
verdict for the City because it had introduced substantial evidence reasonably 
supporting the council’s findings. Id. Relying on Crossman and 
Reagan, this Court rejected the City’s argument for application of the 
substantial evidence rule:
 
The authority to decide such a question involves the 
exercise of judicial discretion, and ordinarily includes the authority to weigh 
evidence, to make findings of fact, and to apply rules of law. It may well be 
doubted that a limited review of the facts, as under the substantial evidence 
rule, would amount to a judicial determination of the justiciable question here involved. Trial under that rule 
would not establish whether or not the buildings are nuisances, “in the same 
manner as any other fact.” Certainly we would not be justified in applying 
the substantial evidence rule to this case when there is nothing in the 
statutes, including the home rule enabling act, or in the city’s charter or in 
the city’s ordinance, expressing an intention that the suit be tried under that 
rule.
 
Lurie, 224 S.W.2d at 876 (emphasis added). 
Thus, the Court’s refusal to afford preclusive effect to the council’s 
determination that a property was a nuisance, or to afford substantial evidence 
review of the council’s determination, occurred in the absence of a statute or 
ordinance providing for substantial evidence review. Id.
      Similarly, in 
the cases upon which Lurie relied—Stockwell, Crossman, and Reagan—there 
was no statute or ordinance providing for judicial review. See Stockwell, 221 S.W. at 934; Crossman, 247 S.W. at 
811; Reagan, 247 S.W. at 816-17. Lurie and its predecessor cases 
stemmed from the Court’s refusal to recognize a non-judicial nuisance finding as 
conclusive. See Lurie, 224 S.W.2d at 875; see also Reagan, 247 
S.W. at 817 (refusing to uphold an ordinance that “makes final the determination 
of the city council on the question as to whether or not the building under 
investigation is a nuisance”); Crossman, 247 S.W. at 813 (“Another vice 
of this ordinance is that it purports to make the action of the city 
commissioners, in declaring the building a nuisance, final.”). These cases 
expressed the Court’s position that such an approach subjected property rights 
to disposition by officials “exercising, not judicial powers, but purely 
executive powers.” Stockwell, 221 S.W. at 
934.
      Since those 
cases were decided, however, the Legislature has enacted statutes authorizing 
substantial evidence judicial review of similar types of decisions. See 
Tex. Loc. Gov’t 
Code § 54.039(f) (“The district court’s 
review shall be limited to a hearing under the substantial evidence rule.”); 
id. § 214.0012(f) (“Appeal in the district court 
shall be limited to a hearing under the substantial evidence rule.”). The City 
of Dallas has incorporated the statutory standard into its ordinance. See 
Dallas Tex. Code § 27-9(e). Thus, in the 
matter before us, unlike the situations in Lurie, Stockwell, Crossman, and Reagan, 
statutes and an ordinance provide a definition of nuisance, procedures for 
giving notice of and determining whether property falls within the definition of 
nuisance, judicial review of the nuisance determination, and the standard to be 
used in any judicial review. See Cedar Crest # 10, Inc. v. 
City of Dallas, 754 S.W.2d 351, 353 (Tex. App.—Eastland 1988, writ denied) 
(distinguishing Lurie on these grounds).
      Although the 
Court recognizes that Lurie involved the absence of a statutory basis for 
substantial evidence review, in a footnote of its opinion the Court concludes 
that the basis of the Court’s holding was not statutory; instead, Lurie 
focused on the special nature of the right being protected. ___ S.W.3d ___ n.15. I agree that the right involved in 
Lurie was special: it was the constitutional right of a private property 
owner to be secure from governmental taking of private property without 
compensation. See Lurie, 224 S.W.2d at 874. But 
the Court subsequently squarely held substantial evidence review valid as 
applied to this same right.
      In City of 
Houston v. Blackbird, 394 S.W.2d 159 (Tex. 1965), the City of Houston passed 
an ordinance that levied assessments against property owners for improvements 
made to streets abutting their properties. Id. at 
161. The amount of the assessments were based on 
the city council’s determination that the property owners would receive special 
benefits from the proposed improvements. Id. The property owners filed 
suit in district court seeking de novo review of the council’s determination 
that their property would be especially benefitted by the improvements. 
Id. On appeal, this Court concluded that the validity of the amount of 
the assessments involved the takings clause of the Texas Constitution, yet the 
property owners were not entitled to de novo review of the council’s 
determinations:
 
An assessment against property and its owner for paving 
improvements on any basis other than for benefits conferred and in an amount 
materially greater than the benefits conferred, violates Sec. 17 of Article 1 of the Constitution of Texas, 
which prohibits the taking of private property for public use without just 
compensation. The right to judicial review of acts of legislative and 
administrative bodies affecting constitutional or property rights is axiomatic. 
The City of Houston does not question the verity or soundness of this 
proposition. What the City does question is the right of respondents in this 
case to a full-blown de novo trial of the question of benefits. We agree with 
the City that respondents had no such right; and, accordingly, we agree with the 
City that respondents were not entitled to a jury trial of the issues in this 
case and that the jury’s answers to the special issues submitted to them 
should have been disregarded.
 
Id. at 162-63 (emphasis added) 
(citations omitted). As the Court noted, the Legislature “precluded judicial 
review of such acts to the extent of its constitutional power” and the 
Legislature did not intend to provide “dissatisfied property owners a de novo 
review thereof.” Id. at 163. The Court upheld 
that choice by the Legislature, even though the takings clause was the basis for 
the property owners’ challenge, just as it underlies Stewart’s 
challenge.
      Similarly, the 
Court held in Brazosport Savings and Loan 
Ass’n v. American Savings and Loan Ass’n that parties claiming an agency’s decision 
infringed their vested property rights in franchises had a right to judicial 
review, but the right was limited to “prov[ing] their allegations that the Commissioner’s action was 
illegal or without support in substantial evidence.” 342 
S.W.2d 747, 752 (Tex. 1961).
      The Court 
discounts the holdings of Blackbird and Brazosport by reading them as “due process cases 
alleging improper agency actions implicating property interests.” ___ S.W.3d ___. But in Blackbird the Court squarely 
addressed the issue as one involving the takings clause of the Texas 
Constitution. Id. at 163. The only real 
distinction between Blackbird and Lurie is that Lurie 
involved the taking of real property, whereas Blackbird involved the 
taking of money by means of requiring payment of an assessment. But they are 
both property takings claims, nonetheless. And the result in Blackbird 
depended on the city council’s fact-based finding that the abutting landowners’ 
property was especially benefitted by the paving. The Court nevertheless holds 
that findings of the URSB cannot survive because review was by the substantial 
evidence standard even though the URSB’s decision did not entail interpretation 
of law or the constitution. And the Court does so despite Stewart’s failure to 
challenge any part of the process provided in Dallas’s ordinances as being 
unconstitutional or violating statutes. Her specific complaint was about the 
post-hearing, pre-demolition notice required by section 27-13 of Dallas’s 
ordinances, and the jury found against her on that question. She neither 
complains of how the due process question was submitted to the jury nor 
challenges the jury’s finding on it. To the contrary, she moved for judgment on 
the verdict without excepting or excluding the due 
process finding from her motion.
      The Court also 
states that Blackbird and Brazosport 
“both predate our decision in [Steele v. City of Houston, 603 S.W.2d 
786], which recognized an implied constitutional right of action for takings 
claims.” ___ S.W.3d ___. The Court concludes “Steele [] undermined their 
vitality insofar as they give broad deference to the Legislature’s determination 
of remedial schemes for property rights violations.” ___ 
S.W.3d ___. This statement implies that Steele overruled Brazosport and Blackbird. But Steele 
does not address Brazosport and 
Blackbird, nor does it address the Legislature’s authorization and 
establishment of a quasi-judicial process to address public 
nuisances.
      In 
Steele, police sought to flush and capture fugitive prisoners by starting 
a fire in the house where the fugitives were hiding. 603 
S.W.2d at 789. The house burned and the owners sought compensation from 
the city. Id. The case did not involve the propriety of an administrative 
process involving a limited definition of what comprised a public nuisance and 
provisions for notice, presentment of evidence, opportunity for rehearing, 
judicial review of findings and determinations, and even judicial authority to 
modify the administrative order. See id. at 792. 
Rather, it involved whether the police’s burning of the 
property came within the doctrine of great public necessity. See id. 
(“The defendant City of Houston may defend its actions 
by proof of a great public necessity.”). That doctrine recognizes that a 
governmental entity may destroy property “[i]n the 
case of fire, flood, pestilence or other great public calamity, when immediate 
action is necessary to save human life or to avert an overwhelming destruction 
of property.” Id. at 792 n.2.
      In contrast to 
Steele, where the question was whether an emergency existed and property 
was destroyed without prior proceedings to determine the public nuisance 
question, statutorily authorized abatement proceedings involve quasi-judicial 
determinations occurring before destruction of the property and affording 
procedural and substantive safeguards to property owners. See Tex. Loc. Gov’t Code § 54.034. Situations 
involving determining whether property was previously destroyed because of great 
public necessity are different from situations involving destruction of property 
following proceedings pursuant to statutes and ordinances requiring advance 
notice, a hearing with the opportunity to challenge the public nuisance 
determination before destruction, and review by a court empowered to set aside 
or modify the final order. In my view Steele is inapposite. See, e.g., Crossman, 247 S.W. at 814; Stockwell, 221 S.W. at 935. The Court simply 
displaces a permissible Legislative decision to prescribe a particular type of 
judicial review and oversight of the determination that property was a nuisance 
and the administrative remedy.[2] See Tex. Loc. Gov’t Code §§ 54.039(f), 214.0012(f); Blackbird, 394 
S.W.2d at 162-63; ___ S.W.3d at ___ (Guzman, J., 
dissenting).
IV. Issue 
Preclusion
      Citing City 
of Houston v. Crabb, 905 S.W.2d 669 (Tex. App.—Houston [14th Dist.] 1995, no 
writ), the court of appeals held that Stewart was not precluded from asserting a 
takings claim because the nuisance issues underlying the URSB proceeding and 
Stewart’s takings suit were not identical: the City’s nuisance defense required 
proof “that the demolished structure was a nuisance on the day it was 
demolished,” but the URSB “made its nuisance finding over a year before 
Stewart’s house was actually demolished.” ___ S.W.3d ___, ___ (emphasis added). 
But the facts in Crabb differ significantly from those before us. In 
Crabb the City of Houston notified Crabb that a building he owned was 
dangerous and that the City intended to demolish it. See Crabb, 905 S.W.2d at 671. Crabb attended a hearing where he 
maintained that he intended to repair the building and sell the property. 
Id. The City nevertheless issued an order stating that he had to demolish 
the building or the City would do so. Id. One year after the City sent 
the order to Crabb, a city inspector visited the 
property and determined that the City should not destroy the structure. 
Id. Crabb then spent $13,000 for repairs to the building, including a new 
roof, all new walls, and all new fixtures. Id. Over a year and a half 
after the city had first notified Crabb of its intent to do so and after the 
structure had been repaired, the City unexpectedly demolished it. Id. 
Crabb brought a takings claim and the City argued that its nuisance 
determination barred his suit. The court of appeals agreed that under the facts 
Crabb could assert his claim.
      Unlike the 
situation in Crabb, the URSB found Stewart’s property to be a nuisance in 
two evidentiary hearings that took place a year apart—the second being a 
rehearing pursuant to her request. Stewart has never denied adequate notice of 
both hearings. The transcript of the second hearing shows that Stewart appeared, 
took part, and even brought a witness who testified on her behalf.
      Following its 
September 2001 hearing, the URSB found by a preponderance of the evidence that 
Stewart’s property was a public nuisance as defined by Dallas’s ordinances and 
the Local Government Code and rendered an order to that effect. The Board 
specifically reaffirmed the 2001 findings and order on September 23, 2002—again 
specifically by a preponderance of the evidence—after hearing evidence from the 
city inspectors, Stewart, Stewart’s mother, and the same neighbor who testified 
in September 2001. At the second hearing, Stewart did not claim that repairs had 
been made to the property since the first hearing or that she did not have 
notice of the specific problems that resulted in the determination that the 
property was a nuisance. She claimed that she had always intended to repair the 
property, but the extent to which she carried out that intent was to install a 
fence that she maintained restricted entry to the property. On September 26, 
2002, Stewart received written notice that the City intended to demolish the 
property; on October 17, 2002, a city inspector re-inspected the property and 
determined that the code violations had not been corrected; and a week later the 
City’s special-projects manager inspected the property and determined that no 
repairs had been made. On October 28, 2002, a City magistrate signed a judicial 
warrant authorizing demolition of the property and the demolition took place on 
November 1, 2002.
      As previously 
noted, Stewart disputed the City’s contention that her property was a nuisance, 
but she did not claim or offer evidence that there had been a substantial change 
in her property between the time of the URSB’s 
September 23, 2002 finding that the property continued to be a public nuisance 
and the property’s demolition on November 1, 2002. Nor did she seek a court 
order—which she could have—directing the City to defer any action until after 
her appeal was complete.
      I would hold 
that under this record, Stewart’s takings claim was barred by the URSB’s 
nuisance finding and the trial court’s affirming of it. See, e.g., Igal v. 
Brightstar Info. Tech. Grp., Inc., 250 S.W.3d 78, 87 (Tex. 2007) (holding that 
when the Texas Workforce Commission acted in a judicial capacity in deciding a 
wage claim, the parties had adequate opportunity to litigate their claims 
through an adversarial process, and the Commission then decided disputed issues 
of fact, res judicata will generally apply to the 
Commission’s final orders and bar relitigation of the 
matters decided); Eagle Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 721-22 (Tex. 1990) (stating 
that the doctrine of issue preclusion bars “the relitigation of identical issues of fact or law which were 
actually litigated and essential to the prior judgment”); Humble Oil & 
Ref. Co. v. Fisher, 253 S.W.2d 656, 661 (Tex. 1952) (holding that even 
errors in a previous decision do not “detract from or lessen the conclusive and 
binding effect of the judgment”).
V. 
Conclusion
      I would hold 
that the process provided to Stewart by the URSB proceedings and appellate 
review of those proceedings and the URSB’s order by the substantial evidence 
standard was sufficient. In this regard I join Justice Guzman’s 
dissent.
      I would reverse 
the judgment of the court of appeals and render judgment that Stewart take nothing.
 
 
                                                
      
________________________________________
                                                
      
Phil Johnson
                                                
      
Justice
 
 
OPINION DELIVERED: July 1, 2011






[1] Some 
provisions of the Code have been amended. References will be to code language 
applicable to this matter.

[2] In an 
effort to undercut the legitimacy of the URSB’s determinations, the Court states 
that abatement proceedings are necessarily motivated in part by the City’s 
bottom line because the URSB’s job is to eliminate unsightly conditions 
adversely affecting the economic value of neighboring property and the City’s 
tax base. ___ S.W.3d ___ n.18. But, to be clear, there 
is no evidence in the record of any impropriety by the 
URSB.